UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NA'EEM BETZ,

Plaintiff,

v.

HOWARD UNIVERSITY HOSPITAL,

Defendant.

Civil Action No. 22-1578 (JEB)

## MEMORANDUM OPINION

In the latest of his innumerable *pro se* Telephone Consumer Protection Act lawsuits, Plaintiff Na'eem Betz alleges that Defendant Howard University Hospital violated the TCPA by calling him three or four times regarding medical care. In now seeking summary judgment, Howard rejoins that Plaintiff's suit fails for a slew of reasons; among them, Betz's own exhibits show that the calls were not solicitations made by an automated dialing system, but instead were outreach from Hospital staff to help a patient navigate the insurance process. More broadly, Howard contends, Betz is a serial litigant who has made a cottage industry of bringing meritless TCPA claims in this district and should be enjoined from future litigation. Agreeing, the Court will grant Howard's Motion for Summary Judgment, deny Betz's Motion for Leave to File an Amended Complaint, and enjoin Plaintiff from suing Howard regarding alleged TCPA violations without leave of this Court.

I. Background

A. Statement of Material Facts

As the Court considers materials outside the Complaint, it will treat the Motion as one for summary judgment. Before diving into those materials, however, the Court must decide which

facts are disputed and which are not. Ordinarily, at summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In light of that requirement, and pursuant to Local Civil Rule 7(h) and Federal Rule 56(c), the Court, in resolving summary-judgment motions, may "assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1).

Despite Local Rule 7's instruction, however, Betz filed no "statement of genuine issues" in opposition to Howard's Motion for Summary Judgment. Instead, he offered only blanket assertions that Defendant has "created a false or inaccurate narrative and timeline of events." ECF No. 19 (Pl. Reply) at 1. The Court will thus generally credit the facts in Howard's Statement of Material Facts. See ECF No. 6-12 (Howard SUMF); Joe Hand Promotions, Inc. v. Molly Malone's LLC, No. 19-3479, 2021 WL 4502073, at *1 (D.D.C. Oct. 1, 2021).

B. Statutory Framework

The Telephone Consumer Protection Act of 1991, known as the TCPA, prohibits companies from making telephone solicitations to numbers registered on the national do-not-call registry. The relevant section of the Act's implementing regulations, 47 C.F.R. § 64.1200(c)(2), provides:

> (c) No person or entity shall initiate any telephone solicitation to: . . . (2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government . . . .

The Act defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person . . . ." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).

The TCPA also generally prohibits sending robocalls to cellular and home phones. See Barr v. Am. Ass'n of Pol. Consultants, Inc., 140 S. Ct. 2335, 2343 (2020). As relevant here, the Act makes it unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone service . . . .

47 U.S.C. § 227(b)(1)(A)(iii). The Act in turn defines the term "automatic telephone dialing system" as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers." Id., § 227(a)(1); see also Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021).

C. Factual Background

Plaintiff Na'eem Betz is no stranger to the TCPA. He has filed 20 lawsuits in this district over the past decade, most of which raise claims under the Act. See SUMF, ¶ 10; ECF No. 6-2 (List of Cases). Nor is this his first rodeo with Howard University Hospital. Plaintiff has twice before tried to bring TCPA claims against Howard or its vendor-partners; after the second go-round, he signed a settlement agreement explicitly allowing that calls from Howard at the rate of

no more than two per week "are not a violation of the TCPA or any other similar statute." SUMF, ¶ 13.

The present skirmish began when the Hospital treated a pseudonymous patient, known as Patient Doe, in May 2021 and May 2022. Id., ¶ 3. Patient Doe provided a phone number ending in 8063 as his contact information. Id., ¶ 4. That 8063 number just so happens to be Plaintiff's self-identified cell-phone number. Id., ¶ 5; see ECF No. 1 (Compl.), ¶ 15.

Betz alleges that Howard then called that number three times in 2021 and 2022 — on June 2, 2021, May 13, 2022, and May 24, 2022. See SUMF, ¶ 7; Compl., ¶ 15. (His proposed Amended Complaint alleges that Howard also called him a fourth time. See ECF No. 12-2 (Proposed FAC), ¶ 15.) As exhibits to his original Complaint, Plaintiff attached what appear to be transcripts of voicemails a Howard staff member left during the second and third calls. See ECF No. 1-2 (Exhibits) at 19 (First Voicemail); Exhibits at 24 (Second Voicemail). Those voicemails show a "Ms. Johnson" calling to see whether the patient has health insurance, and, if not, to see whether she could help that patient with Medicare. Id. Plaintiff identifies nothing about the calls that suggests that any came from an automatic dialing machine.

Betz filed his initial Complaint on May 31, 2022. In it, he contends that Howard's three calls violated the TCPA. See Compl., ¶¶ 36–42. After filing his Complaint, Betz repeatedly tried to badger Howard into settling: he emailed Defendant more than 40 times between May and August 2022 seeking money, and at least ten more times later that year. See SUMF, ¶ 19; ECF No. 15 (Def. Opp.) at 15. Howard, for its part, represents that it was clear from the outset that it would not engage in settlement discussions with Betz. See ECF No. 6-6 (Declaration of Zachary I. Shapiro), ¶¶ 11–14.

4

Howard then moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. See ECF No. 6 (MTD/MSJ). Evidently at its wits' end, Howard also requested a prefiling injunction against Betz for any future TCPA-related claims. Id. at 16. In response, Betz moved for leave to file an Amended Complaint. See ECF No. 12 (Motion for Leave). Howard opposed that Motion, arguing that amendment would be futile.

## II.     Legal Standard

As the Court considers Defendant's Motion as one for summary judgment, it sets forth only that standard. Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Liberty Lobby, 477 U.S. at 247–48; Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Pursuant to Federal Rule of Civil Procedure 15(a)(2), this Court "should freely give leave [to amend a complaint] when justice so requires." It is clear, however, that amendment should not be permitted if it would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (noting

"futility of amendment" as permissible reason to deny Rule 15(a) motion).  In other words, if the new or amended causes of action would still be deficient notwithstanding the proposed amendment, courts need not grant leave.  In re Interbank Funding Corp. Securities Litigation, 629 F.3d 213, 218 (D.C. Cir. 2010) ("[A] district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."); James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) ("Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss.").

**III.   Analysis**

The Court's analysis proceeds in three parts; it separately analyzes Howard's Motion for Summary Judgment, Betz's Motion to Amend, and Howard's request for a prefiling injunction.

    A.   Motion for Summary Judgment

Summary judgment for the Hospital is warranted because the undisputed facts establish that Defendant's calls were not solicitations and did not come from an auto dialer, thus dooming Betz's TCPA count.  As a result, the Court need not even address whether Betz has waived his right to sue the Hospital under his prior settlement agreement.

The TCPA defines a solicitation as a "telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."  47 U.S.C. § 227(a)(4).  Here, Plaintiff's own evidence makes clear that the challenged phone calls were not solicitations.  Betz submitted apparent transcriptions of the voice messages he received, which show a Howard employee inquiring about whether the patient has health insurance and offering to help him navigate the Medicare process if he does not.  See First Voicemail; Second Voicemail.  Nothing in those transcriptions — nor anything else in the record — indicates that the calls were made for purposes of solicitation.  Betz

nonetheless tries to frame the calls as solicitations because, in his view, they "solicited to inquire about medical insurance from the Defendant which were financial related or relating to financial content/information." Pl. Reply at 8. Notwithstanding that circular description of their content, the voicemails themselves make clear that their purpose was not to sell Plaintiff anything. Indeed, Howard represents (and Plaintiff does not challenge) that it does not sell health insurance. See MTD/MSJ at 10. Betz, furthermore, has not offered any facts to show that the Hospital was in any way seeking to sell some other service.

The TCPA also prohibits phone calls that "us[e] an automatic telephone dialing system or any artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). But Plaintiff does not even allege that Howard used an automatic dialing system — indeed, as before, his own evidence suggests the contrary. Betz's voicemail transcriptions show that an individual Howard employee called the telephone number to inquire about a patient's insurance coverage.

Plaintiff's central rejoinder is only that he has Article III standing to seek relief against Howard and cites cases to that effect. See Pl. Reply at 5. But Defendant does not contest his standing, and the fact that he has standing does not help him on the merits. Summary judgment for Howard will accordingly be entered.

B. Motion to Amend

Hoping to stave off defeat, Plaintiff moves to amend his Complaint. His proposed version would identify a fourth phone call he alleges that the Hospital made, and it would supplement his sole count with two additional ones: a freestanding count seeking injunctive relief and a count for invasion of privacy under District of Columbia law. See Proposed FAC, ¶¶ 37–52.

7

As to Betz's first count, the few additional facts he seeks to add do not alter the Court's summary-judgment analysis. Plaintiff mentions only a fourth phone call that he allegedly received, along with several irrelevant details; he does not add any factual allegations or exhibits that would suggest that the calls were solicitations or originated from an automated dialer. Such amendment would leave the Court's prior analysis unaltered.

Second, Plaintiff's stand-alone claim for injunctive relief gains no traction. The Declaratory Judgment Act, on which he relies for this count, does not create an independent cause of action but instead only authorizes a remedy. Numerous courts have so held. See, e.g., Malek v. Flagstar Bank, 70 F. Supp. 3d 23, 28 (D.D.C. 2014); Intelsat USA Sales Corp. v. Juch–Tech, Inc., 935 F. Supp. 2d 101, 120 (D.D.C. 2013); see also C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002). A freestanding count under that statute thus cannot succeed.

Third, with the other counts gone, all that would remain is a privacy dispute under District of Columbia law between two non-diverse parties. The Court thus would lack independent subject-matter jurisdiction over that remaining state-law claim, and it would decline to exercise supplemental jurisdiction.

Federal district courts are given supplemental jurisdiction over state claims that "form part of the same case or controversy" as federal claims over which they have original jurisdiction. See 28 U.S.C. § 1367(a). By the same token, they "may decline to exercise supplemental jurisdiction over [such] claim[s] . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion as "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." United

8

Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), quoted in Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005). When deciding whether to exercise supplemental jurisdiction over state claims, federal courts should consider "judicial economy, convenience, fairness, and comity." Shekoyan, 409 F.3d at 424.

Here, the factors weigh against retention of the case. No federal claims against Howard remain; this case, furthermore, has not progressed in federal court past Howard's initial dispositive Motion, and the Court has developed no particular familiarity with the issues presented. Cf. Schuler v. PricewaterhouseCoopers, LLP, 595 F.3d 370, 378 (D.C. Cir. 2010) (finding that district court appropriately retained pendent jurisdiction over state claims where it had "invested time and resources" in the case). The Court can thus conceive of no undue inconvenience or unfairness to the litigants that would result from such a decision. Finally, Betz will not be prejudiced because 28 U.S.C. § 1367(d) provides for a tolling of the statute of limitations during the period the case was here and for at least 30 days thereafter. See Shekoyan, 409 F.3d at 419 (affirming district court finding that because of this tolling, dismissal of pendent state claims "will not adversely impact plaintiff's ability to pursue his District of Columbia claims in the local court system") (citation omitted). He may thus proceed in Superior Court if he so desires.

    C.  Prefiling Injunction

Finally, the Court must decide whether to impose a pre-filing injunction. Such injunctions are an extreme sanction and are a limited exception to the "general rule of free access to the courts." In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988) (quoting Pavilonis v. King, 626 F.2d 1075, 1079 (1st Cir. 1980)). Pre-filing injunctions should be used sparingly, especially against *pro se* plaintiffs. Id. (citing Pavilonis, 626 F.2d at 1079). This Court nonetheless has the

authority and duty to issue injunctions when necessary "to protect the integrity of the courts and the orderly and expeditious administration of justice." Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985).

When considering an injunction, a court must first ensure that the plaintiff has "notice and an opportunity to be heard." Unitronics (1989) (R''G) Ltd. v. Gharb, 85 F. Supp. 3d 118, 130 (D.D.C. 2015) (quoting In re Powell, 851 F.2d at 431). Once that has been accomplished, courts then look at the volume of a plaintiff's filings and the extent to which they are harassing or frivolous. See Caldwell v. Obama, 6 F. Supp. 3d 31, 50–52 (D.D.C. 2013). The Court will analyze these issues in turn.

1. *Notice*

If the target of a pre-filing injunction receives a motion to dismiss or a show-cause order, that typically constitutes sufficient notice. See, e.g., Smith v. Scalia, 44 F. Supp. 3d 28, 46 (D.D.C. 2014). Courts have likewise found that a plaintiff's filing of an opposition memorandum evidences notice. See Rodriguez v. Shulman, 844 F. Supp. 2d 1, 15 (D.D.C. 2012) (holding plaintiffs had opportunity to be heard regarding injunction when they submitted opposition brief).

Here, Betz has received notice and an opportunity to be heard. Howard sought a prefiling injunction in its Motion for Summary Judgment and offered several pages of explanation for why one was warranted. See MTD/MSJ at 14–16. Betz has filed a response to that Motion, see Pl. Reply, as well as his own Motion for Leave to File an Amended Complaint. That suffices for notice.

### 2. *Volume of Filings*

The Court next considers the "number and content" of the litigant's previous filings. See In re Powell, 851 F.2d at 431. The quantity of meritless suits is not necessarily dispositive in granting an injunction. See In re Yelverton, 526 B.R. 429, 433 (D.D.C. 2014) ("The volume of filings alone would not be determinative if his arguments and assertions were generally colorable."); Caldwell, 6 F. Supp. 3d at 51 ("[T]he requisite finding of harassment or vexatiousness does not rest solely on some arbitrary threshold number of lawsuits filed but rather must also take account of the repetitiveness and nature of the claims."). It nonetheless remains relevant as a benchmark. In re Powell, 851 F.2d at 431.

Courts in this district have granted injunctions in cases involving the filing of 11, 15, and 16 actions. See Urban, 768 F.2d at 1498–99 (16); Smith, 44 F. Supp. 3d at 33 (11); Kaufman v. IRS, 787 F. Supp. 2d 27, 29 (D.D.C. 2011) (15). Meritless suits, however, need not reach double digits before an injunction will be granted. See, e.g., Davis v. United States, 569 F. Supp. 2d 91, 99 (D.D.C. 2008) (granting injunction after filing of four "essentially identical" suits); Caldwell, 6 F. Supp. 3d at 41, 51 (granting injunction after filing of five "meritless" suits); Powell v. Davis, No. 18-297, 2018 WL 5621491, at *4–5 (D.D.C. Oct. 30, 2018) (allowing injunction after nine frivolous and harassing suits).

Betz has filed 20 lawsuits in this district, most under the TCPA. See SUMF, ¶ 10. He has filed three against Howard or its partners. His total volume of suits, and his present pattern of suing Howard specifically, is thus sufficiently atypical and disruptive. Such volume would not alone be determinative were Betz's claims colorable, but given their frivolousness (as discussed shortly), their numerosity is great enough to make an injunction appropriate.

### 3. *Harassment*

To determine whether a plaintiff's actions are harassing, "the court should consider the effect of the filings on the parties and the court." Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co., 271 F. Supp. 2d 142, 148 (D.D.C. 2003). Likewise, "forcing the defendants to spend resources litigating previously-resolved claims" constitutes harassment. Id. at 149. Courts should also look for evidence that defendants "feel harassed," which often appears in motions to prohibit the plaintiff from additional filings. Id.

In such analysis, courts also consider whether the filings aim to "harass a particular adversary." In re Powell, 851 F.2d at 431. A plaintiff's decision to cycle between different defendants, however, does not represent a sufficient rebuttal to arguments that his claims are harassing. See Smith, 44 F. Supp. 3d at 47 (affirming pre-filing injunction when plaintiff targeted various judges); Powell, 2018 WL 5621491, at *4 ("[Naming] different defendants" does not make plaintiff's suits "less frivolous" or "less harassing" because "[h]is legal theory hasn't changed[,] . . . and he is not entitled to as many bites at the apple as there are different defendants he can somehow include in the case caption.").

Betz's FTCA lawsuits qualify as harassing, and certainly so with respect to Howard. After his second round of TCPA litigation with the Hospital, he signed an agreement explicitly consenting to two phone calls per week from Howard. Even still, he continues to file TCPA claims against the Hospital and to hound it for settlement funds. Particularly when viewed alongside Plaintiff's repeated emails to Howard and his other TCPA suits in this district, the Court finds these suits to be harassing in nature.

4.  *Frivolousness*

To establish the frivolousness of a plaintiff's suit, a court must consider whether his actions advance "the same basic theory" that is conclusively meritless.  See Powell, 2018 WL 5621491, at *5 (granting injunction when plaintiff was given "repeated admonitions that his claims lack legal merit"); Davis, 569 F. Supp. 2d at 99 (issuing injunction after repetitive filing of "essentially identical" claims).  Courts look for a "clear pattern" of "strikingly similar allegations" in which the plaintiff "propounds substantially the same legal arguments."  Smith, 44 F. Supp. 3d at 46.  These claims need not be identical, so long as the plaintiff's "legal theories and the gravamen of the complaints remain the same."  Id. at 47.

Betz's claims here are frivolous.  His filings "propound[] substantially the same legal arguments" that have not succeeded elsewhere and that lack merit.  See Smith, 44 F. Supp. 3d at 46.  Perhaps appreciating these weaknesses, Plaintiff has turned his attention to badgering Defendant for settlement funds.  These facts all suggest the frivolousness of his action.

5.  *Scope of Injunction*

Finally, the Court has discretion to decide the injunction's scope.  Betz could, for example, be enjoined from filing any suit in courts in this district or in any other federal court.  Urban, 768 F.2d at 1500 (barring plaintiff from filing in this court or "any other federal court"); Mikkilineni, 271 F. Supp. 2d at 143 (barring plaintiff from filing in this court without leave).  As far as substantive scope, Plaintiff could be enjoined from filing without leave of the Court against anyone related to this dispute or any defendant at all.  Powell, 2018 WL 5621491, at *5 (barring plaintiff from filing anything related to a specific dispute); Urban, 768 F.2d at 1500 (barring plaintiff from any filing).

13

In this case, the Court believes that the most sensible path is to craft its injunction narrowly: it will bar Plaintiff from filing suit in this district against Howard under the TCPA. Such an injunction will not unduly encumber Betz's right to "free access to the courts" in relation to other legal claims and other defendants. In re Powell, 851 F.2d at 431. Instead, it will limit Betz only from harassing Howard with further TCPA lawsuits.

## IV. Conclusion

For the foregoing reasons, the Court will grant Howard's Motion for Summary Judgment, deny Betz's Motion for Leave to File an Amended Complaint, and enjoin Plaintiff from suing Howard regarding alleged TCPA violations without leave of this Court. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 9, 2023